Patrick R. Carey (State Bar No. 308623)
Mary Haley Ousley (State Bar No. 332711)
**LEXINGTON LAW GROUP, LLP**
503 Divisadero Street
San Francisco, CA 94117
Telephone: (415) 913-7800
Facsimile: (415) 759-4112
pcarey@lexlawgroup.com
mhousley@lexlawgroup.com

Attorneys for Plaintiffs
ANGELA SONRODE and LACEY TIMMINS

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA SONRODE and LACEY TIMMINS, individually and on behalf of all others similarly situated, | Civil Case No.: |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | |
| THE HAIN CELESTIAL GROUP, INC. | |
| Defendant | |

Plaintiffs Angela Sonrode and Lacey Timmins ("Plaintiffs") on behalf of themselves and those similarly situated, based on information and belief and investigation of counsel, except for information based on personal knowledge, hereby allege as follows:

## INTRODUCTION

1. Due to its protein-rich nature and consumer demand for high-protein foods in the United States, Greek yogurt exploded in popularity over the last two decades. While Greek yogurt constituted only 1% of the United States' yogurt market in 2007, it grew 43% in only six years, constituting 44% of the United States market by 2013. This growth is due in large part to the public's reasonable belief and understanding that Greek yogurt is high in protein. As one-time President of Chobani — one of the most popular Greek yogurt brands — put it: "Once Greek became accessibly priced and broadly distributed *and people understood Greek means high protein*, they snapped it up." (emphasis added).

2. This public perception that Greek means high protein is confirmed in definitions and explanations of Greek yogurt from a wide array of sources, including Dictionary.com, which defines Greek yogurt as a "a thick, creamy, *protein-rich* yogurt . . . ." and health.com, which offers "healthy high protein snack" ideas such as "Frozen Geek Yogurt Bark" which is a "high-protein alternative to sugary desserts like ice cream."

3. The high protein levels that exist in Greek yogurt are a result of how Greek yogurt is made. Greek yogurt is made by straining regular yogurt to remove much of the liquid and whey. This straining not only takes more time and adds extra steps to the production process but also requires more raw material, *i.e.* milk, because much of the liquid byproduct of the milk is removed during the straining process. Both the extra milk required and the more complicated production process are what lead to the high-protein yogurt consumers have come to love and know as Greek yogurt. It is also the reason why Greek yogurt costs more than traditional yogurt.

4. Seeking to capitalize on the consumer understanding that "Greek" yogurt means high protein yogurt, Defendant Hain Celestial Group, Inc. ("Defendant" or "Hain") sells "The Greek Gods

Greek Yogurt."[1]  Hain emphasizes the idea that its yogurt is "Greek Yogurt" by expressly calling it "Greek Yogurt" in all capital letters, selling it under the brand "The Greek Gods," selling it in stores in shelf space devoted to actual Greek-yogurt products, and even using font and other iconography associated with Greece:

  

5.     Despite this outsized emphasis on the "Greek" nature of its yogurt, Greek Gods yogurt is not what consumers reasonably understand to be Greek yogurt.  In fact, Hain's Greek Gods yogurt contains roughly *half* the protein per serving of its competitors that provide an actual Greek yogurt; and the protein content in Greek Gods yogurt is more closely aligned with yogurts like Yoplait, which cost a small fraction of Greek Gods yogurt and which no one expects to be a healthy and high-protein yogurt.

| Brand | Greek Yogurt (Protein Per Serving) | Regular Yogurt (Protein Per Serving) |
|---|---|---|
| **Greek Gods (Regular Milk)** | 7 g per 5 1/3 oz serving | |
| Yoplait Original | | 5 g per 6 oz serving |
| Chobani (Regular Milk) | 15 g  per 6 oz serving | |
| Good & Gather (Regular Milk) | 16 g per 6 oz serving | |
| Oikos (Dannon Brand) (Regular Milk) | 17g per 6 oz serving | |
| Whole Foods Greek Yogurt (Regular Milk) | 16 g per 6 oz serving | |
| Dannon (Regular Milk) | | 6 g per 6 oz serving |
| Cabot Creamery Yogurt (Regular Milk) | | 6 g per 6 oz serving |
| Cabot Creamery Greek Yogurt (Regular Milk) | 16 g per 6 oz serving | |
| Whole Foods Yogurt (Regular Milk) | | 6 g per 6 oz serving |

---

[1] "Greek Gods yogurt" and "Products" as used in this Class Action Complaint refer to all flavors, varieties, and sizes of The Greek Gods Greek Yogurt sold by Hain.

6. The Products' low protein content is the result of Hain not actually making Greek yogurt. Instead of utilizing the straining process described above, which would require more input costs such as more milk, and a longer and more expensive manufacturing process, Hain makes regular yogurt and adds a cheap thickening agent called pectin to its product, which Hain uses to mimic the thick texture consumers associate with actual Greek yogurt.

7. As a result, Hain is not selling Greek yogurt but instead a cheap imitation that is full of pectin and lacks the protein consumers desire, are willing to pay for, and for which Hain charges. Indeed, Hain sells its cheaper imitation Product at Greek yogurt prices. This is despite the fact that regular yogurts, which cost less to manufacture, sell for a fraction of the price of actual Greek yogurts. Hain's blatant deception allows it to sell its Greek Gods yogurt at windfall margins.

8. Plaintiffs and other consumers reasonably relied on Hain's representations that its Greek Gods yogurt was in fact a Greek yogurt product and paid a significant premium to obtain a product, which they reasonably believed would have protein levels in line with an actual Greek yogurt product. However, Plaintiffs and the putative class were deceived and did not receive the high-protein yogurt they paid for and expected to receive.

9. Plaintiffs filed this Class Action Complaint to put a stop to Hain's ongoing deceptive and unfair behavior described above and herein, which violates numerous state, federal, and common laws.

## PARTIES

10. Plaintiff Angela Sonrode is domiciled in Monterey, California. Ms. Sonrode purchased Greek Gods yogurt from various retailers in and around Monterey County, including Safeway and Target. Ms. Sonrode purchased Greek Gods yogurt in reliance on Hain's representations that the yogurt was in fact Greek and therefore high in protein. Specifically, Ms. Sonrode viewed, among other representations, the front label and carton lid of the products that prominently displays the products' brand name, "The Greek Gods" and the words "Greek Yogurt" which she reasonably believed meant the

product was an actual Greek yogurt and therefore high in protein.  She also located the Greek Gods yogurt with actual Greek yogurts on the shelves of the dairy aisle, which further led her to believe Greek Gods yogurt was actual Greek yogurt product.  Ms. Sonrode paid a premium for the Greek Gods yogurt in comparison to similar yogurt products she was considering purchasing because she believed that the Greek Gods yogurt would have higher levels of protein than less expensive regular yogurt.  Ms. Sonrode values yogurts and other products with higher protein content for, among other reasons, a means of maintaining a balanced diet.  Ms. Sonrode wants to continue to purchase Greek yogurt products and would like to purchase Greek Gods products if Greek Gods begins selling an actual Greek yogurt product.  Currently, however, Ms. Sonrode believes she cannot purchase Greek Gods Greek yogurt because she feels she cannot rely on the products representations that it is in fact Greek yogurt.  Ms. Sonrode might also purchase Greek Gods Greek yogurt again in the future, incorrectly assuming the products have been improved to be actual Greek yogurt.

11.     Plaintiff Lacey Timmins is domiciled in Patterson, California.  Ms. Timmins purchased Greek Gods yogurt on numerous occasions from Walmart, both in-store and through the Walmart mobile application.  Ms. Timmins' in-store purchases occurred in and around Stanislaus County.  She also purchased Greek Gods yogurt online through the Walmart mobile application from her home in Patterson, California and had it delivered to her home in Patterson, California.  Ms. Timmins purchased the Greek Gods yogurt in reliance on Hain's representations that the yogurt was in fact Greek and therefore high in protein.  Specifically, Ms. Timmins viewed, among other representations, the front label and carton lid of the products that prominently display the product's brand name, "The Greek Gods" and the words "Greek Yogurt" which she reasonably believed meant the product was an actual Greek yogurt and therefore high in protein.  She also located the Greek Gods yogurt with actual Greek yogurts on the shelves of the dairy aisle, which further led her to believe Greek Gods yogurt was actual Greek yogurt.  Ms. Timmins paid a premium for the Greek Gods yogurt in comparison to similar yogurt

products she was considering purchasing because she believed that the Greek Gods yogurt would have higher levels of protein than less expensive regular yogurt.  Ms. Timmins values yogurts and other products with higher protein content for, among other reasons, a means of maintaining a balanced diet. Ms. Timmins wants to continue to purchase Greek yogurt products and would like to purchase Greek Gods products if Greek Gods begins selling an actual Greek yogurt product.  Currently, however, Ms. Timmins believes she cannot purchase Greek Gods Greek yogurt because she feels she cannot rely on the products representations that it is in fact Greek yogurt.  Ms. Timmins might also purchase Greek Gods Greek yogurt again in the future, incorrectly assuming the products have been improved to be actual Greek yogurt.

12.     Defendant The Hain Celestial Group, Inc. is a Delaware corporation with its principal place of business in Hoboken, New Jersey.  Defendant sells and offers for sale its Greek Gods yogurt online and in physical retail locations throughout California, including in Walmart, Target, Albertsons, Safeway, Vons, Lucky, Kroger, Ralphs, and Food 4 Less.  Hain also advertises its Products to consumers throughout California both online and through other forms of media.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are more than 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

14.     This Court has specific personal jurisdiction over Defendant because a substantial part of the events and conduct giving rise to Plaintiffs' claims occurred in California, including, *inter alia*: Hain made the Greek Gods yogurt available for sale throughout California, both in retail stores and through online purchasing; Hain marketed the Greek Gods yogurt within California and made its misleading

representations and omissions within California; and Plaintiffs purchased Greek Gods yogurt within California.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) & (d).  A substantial part of the events or omissions giving rise to the claims occurred in this District as, at the very least, Ms. Sonrode resides within this District and purchased Greek Gods yogurt from Hain within this District. See § 1391(b)(2).  Defendant Hain is also a resident of this District because its contacts with this District are sufficient to subject it to personal jurisdiction here.  See 28 U.S.C. § 1391(d).

16.     Divisional Assignment (L.R. 3-2 (c), (d) & (e) and 3-5(b)):  A substantial part of the events which gave rise to the claims asserted herein occurred in Monterey County where Ms. Sonrode resides and purchased the Greek Gods yogurt, making the San Jose Division an appropriate Division for this case.

## BACKGROUND

17.     Consumer demand for protein-rich products is at an all-time high and continues to grow with shoppers seeking protein in all forms, whether in meat, dairy, or plant-based sources.  Indeed, today's health-conscious consumers understand that protein is an indispensable macronutrient with myriad health benefits from muscle building to immune system health and tissue repair.  Protein is also touted as the centerpiece of numerous modern diet trends.

18.     As a result, consumer demand for foods like Greek yogurt continues to grow rapidly. Indeed, Greek yogurt is synonymous with high-protein protein yogurt, a fact reflected in scientific literature concerning diet and exercise, articles, and blog postings.  To quote just a few, The University of Tennessee Medical Center, in a Health Tips article titled "The Benefits of Eating Greek Yogurt" notes that "Greek yogurt has twice as much protein" as regular yogurt, and a Harvard Medical School article on protein intake observes that someone could get her recommended 46 grams of protein in a day by consuming "1 serving of low-fat Greek yogurt, a 4 oz. serving of lean chicken breast and a bowl of

cereal with skim milk" — a calculation that only works if the Greek yogurt, unlike Greek Gods yogurt, actually has two times the amount of protein of regular yogurt. Numerous other examples of this commonly understood expectation that "Greek means high protein" abound.

19.     The wide array of articles discussing the high-protein content of Greek yogurt reflects the reality that the legitimate brands of Greek yogurt have twice the amount of protein as brands of regular yogurt.

| Brand | Greek Yogurt (Protein Per Serving) | Regular Yogurt (Protein Per Serving) |
|---|---|---|
| **Greek Gods (Regular Milk)** | 7 g per 5 1/3 oz serving | |
| Yoplait Original | | 5 g per 6 oz serving |
| Chobani (Regular Milk) | 15 g  per 6 oz serving | |
| Good & Gather (Regular Milk) | 16 g per 6 oz serving | |
| Oikos (Dannon Brand) (Regular Milk) | 17g per 6 oz serving | |
| Whole Foods Greek Yogurt (Regular Milk) | 16 g per 6 oz serving | |
| Dannon (Regular Milk) | | 6 g per 6 oz serving |
| Cabot Creamery Yogurt (Regular Milk) | | 6 g per 6 oz serving |
| Cabot Creamery Greek Yogurt (Regular Milk) | 16 g per 6 oz serving | |
| Whole Foods Yogurt (Regular Milk) | | 6 g per 6 oz serving |

20.     In fact, it is the very process by which Greek yogurt is made that leads to these high levels of protein. Greek yogurt has high protein levels as a result of a time and resource intensive production process that involves taking what is essentially regular yogurt and straining it. The straining removes whey and other liquid byproducts created during the fermentation process, which in turn means that more milk is required to continuously replace the removed byproduct. As a result, Greek yogurt is more expensive to produce than regular yogurt both because of the more labor-intensive straining process and the additional raw material costs of the required milk.

21.     None of this, except for the higher prices for consumers and the name, seems to apply to Hain's Greek Gods yogurt. To the contrary, Hain seeks to capitalize on consumer demand for high-protein products, consumer understanding that "Greek means high protein," and consumer willingness to

pay a premium for protein-rich products, by marketing its yogurt as "Greek Yogurt" while at the same time providing a cheaply produced product that provides only half the protein of actual Greek yogurt and selling Greek Gods yogurt at the same prices as actual Greek yogurts.

22.    Indeed, Hain emphasizes the idea that its yogurt is "Greek" by expressly labeling its yogurt as "Greek Yogurt" in all capital letters on the principal display panel of every Product. Hain also sells the Products under the brand "The Greek Gods" and utilizes a font and other iconography associated with Greece. Hain further reinforces this idea by ensuring that its yogurt is placed on store shelves amongst actual Greek yogurt products, rather than amongst regular yogurts. And even Hain's website claims that it "perfectly craft[s] every cup of Greek Gods using an old-world method."

23.    Despite this emphasis on the purportedly Greek nature of its yogurt, however, Hain is not using an "old-world" method or providing an actual Greek yogurt. Instead of making Greek yogurt using the time and cost intensive straining method described above, Hain apparently makes the Greek Gods yogurt by adding a cheap thickening agent, pectin, to regular yogurt. The pectin allows Hain to create a thicker regular yogurt, mimicking the texture of Greek yogurt, while avoiding the more costly production processes that go into making actual, high-protein Greek yogurt.   All of this deceives consumers into thinking they are buying an actual Greek yogurt and paying Greek yogurt prices, when in fact consumers are receiving a knock off product with less than half the protein they have come to expect in Greek yogurt.

24.    Hain's ongoing practice of selling, labeling, and representing the Greek Gods yogurt as "Greek Yogurt" when that yogurt contains only a fraction of the protein of actual Greek yogurt, has deceived, and is likely to deceive, reasonable consumers, including Plaintiffs here. Plaintiffs purchased the Greek Gods yogurt based on Hain's false and misleading representations that its product is Greek yogurt and Plaintiffs' reasonable understanding that Greek yogurt contains higher amounts of protein. Prior to purchasing the Greek Gods yogurt, Plaintiffs viewed the various representations on the

9

packaging regarding the "Greek" nature of the Greek Gods yogurt.  If Plaintiffs had known Hain's

Greek Gods yogurt contains significantly less protein in comparison with actual Greek yogurts,

Plaintiffs would not have purchased the Greek Gods yogurt, would not have paid as much as they did for

it, or purchased less of the Product.

      25.    Hain is aware that selling the Greek Gods yogurt as Greek yogurt in California is

unlawful.  Yet Hain has not undertaken any effort to notify its customers of the problem.  Hain's failure

to disclose that its Product is not Greek yogurt, and its misleading representations that its Product is

Greek yogurt, is both an omission of fact that is material to Plaintiffs and the other members of the class

and a material misrepresentation on which Plaintiffs and other members of the class reasonably relied.

## CLASS ACTION ALLEGATIONS

      26.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action

on behalf of themselves and the following classes of similarly situated individuals:

> **The Class**:  All persons who purchased the Products in the United States
> (either directly or indirectly) during the applicable statute of limitations.

> **The California Class**:  All persons who purchased the Products (either
> directly or indirectly) in California during the applicable statute of
> limitations.

      27.    Specifically excluded from this class are the following: Defendant, the officers, directors

or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate,

legal representative, heir or assign of Defendant.  Also excluded are any federal, state, or local

governmental entities, any judicial officer presiding over this action and the members of his/her

immediate family and judicial staff, and any juror assigned to this action.

      28.    Plaintiffs are unable to state the precise number of potential members of the proposed

class because that information is in the possession of Hain or others.  However, the number of class

members is so numerous that joinder would be impracticable for purposes of Rule 23(a)(1) of the Federal Rules of Civil Procedure. The exact size of the proposed class and the identity of its members will be readily ascertainable from Hain's business records and those of third-party sellers of the Products as well as class members' own records and evidence. Joinder of all purchasers of the Products in a single action or bringing all members of the class before the Court is impracticable. The disposition of the claims of the members of the class in this class action will substantially benefit both the parties and the Court.

29.　　There is a community of interest among the members of the proposed class in that there are questions of law and fact common to the proposed Class for purposes of Rule 23(a)(2), including whether Hain's labels and advertisements include uniform misrepresentations that misled Plaintiffs and the other members of the class to believe the Products are Greek yogurt when they are not. Proof of a common set of facts will establish Hain's liability and the class members' right to relief.

30.　　Plaintiffs assert claims that are typical of the claims of the entire class for purposes of Rule 23(a)(3). Plaintiffs and all members of the class have been subjected to the same wrongful conduct because they have purchased Hain's Products that are labeled and sold as "Greek Yogurt" when those products are not in fact Greek yogurt.

31.　　Plaintiffs will fairly and adequately represent and protect the interests of the other members of the class for purposes of Rule 23(a)(4). Plaintiffs have no interests antagonistic to those of other members of the class. Plaintiffs are committed to the vigorous prosecution of this action and have retained counsel experienced in complex litigation of this nature to represent them. Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

32.　　Class certification is appropriate under Rule 23(b)(2) because Hain has acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief, is

appropriate respecting the class as a whole.  Hain utilizes advertising and product labeling that includes uniform misrepresentations that misled Plaintiffs and the other members of the class.

33.    Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact substantially predominate over any questions that may affect only individual members of the class.  These common legal and factual questions, which do not vary among class members, and which may be determined without reference to the individual circumstances of any class member include, but are not limited to the following:

A.    whether Hain advertises, markets, sells, labels, and represents its Products as Greek yogurt;

B.    whether Hain's representations that the Products are Greek yogurt are likely to deceive a reasonable consumer;

C.    whether Hain knows that the Products are not Greek yogurt;

D.    whether Hain's representations of the Products as Greek yogurt are likely to be read and understood by a reasonable consumer;

E.    whether Hain's representations that the Products are Greek yogurt are material to a reasonable consumer;

F.    whether Hain's conduct in selling, labeling, and representing the Products as Greek yogurt constitutes a violation of California consumer protection laws;

G.    whether Hains's representations concerning the Products as Greek yogurt constitute express warranties;

H.    whether Hain breached the express warranties it made with regard to the Products;

I.    whether Hain's representations of the Products as Greek yogurt constitute representations that the Products have characteristics, benefits, or qualities which they do not have;

J.    whether Hain advertised its Products without an intent to sell them as advertised;

K.    whether Hain has been unjustly enriched from the sale of the Products;

L.    whether punitive damages are warranted for Hain's conduct and, if so, an appropriate amount of such damages; and

M.    whether Plaintiffs and the class members are entitled to injunctive, equitable, and monetary relief.

34.    Hain utilizes marketing and labeling that includes uniform misrepresentations that misled Plaintiffs and the class members.  Hain's claims that the Products are Greek yogurt are the most prominent feature of Hain's marketing and labeling of the Products.  However, the Products are not in fact Greek yogurt and fail to meet a reasonable consumer's expectation as to the amount of protein that authentic Greek yogurt products contain.  Thus, there is a well-defined community of interest in the questions of law and fact involved in this action and affecting the parties.

35.    Proceeding as a class action provides substantial benefits to both the parties and the Court because this is the most efficient method for a fair and efficient adjudication of the controversy.  Class members have suffered and will suffer irreparable harm and damages as a result of Hain's wrongful conduct.  Because of the nature of the individual class members' claims, few, if any, could or would otherwise afford to seek legal redress against Hain for the wrongs complained of herein, and a representative class action is therefore appropriate, the superior method of proceeding, and essential to the interests of justice insofar as the resolution of class members' claims is concerned.  Absent a representative class action, members of the class would continue to suffer losses for which they would have no remedy, and Hain would unjustly retain the proceeds of its ill-gotten gains.  Even if separate actions could be brought by individual members of the class, the resulting multiplicity of lawsuits would cause undue hardship, burden and expense for the Court and the litigants, as well as create a risk of inconsistent rulings which might be dispositive of the interests of the other members of the class who are not parties to the adjudications and/or may substantially impede their ability to protect their interests.

**FIRST CAUSE OF ACTION**

**Violations of California's Consumers Legal Remedies Act — California Civil Code §
1750, et seq. ("CLRA")**

**(Plaintiffs, on Behalf of Themselves and the California Class)**

36.     Plaintiffs reallege and incorporate by reference as if specifically set forth herein the paragraphs of this Class Action Complaint.

37.     Hain has violated the CLRA because it engaged in unfair methods of competition and unfair or deceptive acts or practices in transactions that resulted, or were intended to result, in the sale or lease of goods or services to consumers, and those consumers were harmed by Hain's actions.

38.     Plaintiffs and other Class members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d) in that they are and were individuals who sought to acquire and acquired, by purchase or lease, goods or services for personal, family, or household purposes.

39.     The Products that Plaintiffs and other Class members purchased from Hain were "goods" within the meaning of California Civil Code § 1761(a).

40.     Plaintiffs and other Class members purchased the Products after viewing Hain's material representations that the Products were Greek yogurt or based on their belief or understanding that that was formed in reliance on Hain's material representations about the Greek nature of the yogurt.

41.     The acts and practices of Hain as described above were intended to deceive Plaintiffs and the members of the Class as described herein and have resulted and will result in damages to Plaintiffs and members of the Class.  This conduct includes, but is not limited to, misrepresenting that the Products are Greek yogurt.  These actions violated and continue to violate the CLRA in at least the following respects:

        a.     In violation of CLRA § 1770(a)(5), Hain's acts and practices constitute representations that the Products have characteristics, uses, or benefits which they do not;

b.  In violation of CLRA § 1770(a)(7), Hain's acts and practices constitute representations that the Products are of a particular quality which they are not; and

c.  In violation of CLRA § 1770(a)(9), Hain's acts and practices constitute the advertisement of the goods in question without the intent to sell them as advertised.

42.   By reason of the foregoing, Plaintiffs and the Class members have suffered damages, losses, and/or otherwise have been harmed.

43.   By committing the acts alleged above, Hain has violated the CLRA and continues to violate the CLRA.

44.   In compliance with the provisions of California Civil Code § 1782, on May 14, 2024, Plaintiffs provided written notice to Hain of their intention to seek damages under California Civil Code § 1750, *et seq.*, and requested that Hain offer an appropriate consideration or other remedy to all affected consumers.  As of the date of this Class Action Complaint, Hain has not done so.  Accordingly, Plaintiffs seek damages pursuant to California Civil Code §§ 1780(a)(1) and 1781(a) from Hain.

45.   Pursuant to California Civil Code § 1780(a)(2), Plaintiffs and the Class members are also entitled to an order enjoining the above-described wrongful acts and practices of Hain, providing actual and punitive damages and restitution to Plaintiffs and the Class members, and ordering the payment of costs and attorneys' fees and any other relief deemed appropriate and proper by the Court under California Civil Code § 1780.

46.   Plaintiffs and Class members are entitled to an order enjoining Hain's wrongful acts and practices because they will be harmed again without an injunction and lack an adequate remedy at law to prevent or remedy such harm.

47.   Concurrently with the filing of the original complaint, Plaintiff filed an affidavit pursuant to Civil Code § 1780(d) regarding the propriety of venue.  Venue is proper pursuant to Civil Code § 1780(d) as a substantial portion of the transactions at issue occurred in this District.

48.    Wherefore, Plaintiff prays for judgment against Hain as set forth hereafter.

## SECOND CAUSE OF ACTION

### False Advertising — Business and Professions Code § 17500, et seq. ("FAL")
### (Plaintiffs on Behalf of Themselves and The California Class)

49.    Plaintiffs reallege and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

50.    Hain made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of the Products, including on the front labels of the Products.

51.    Hain made representations and statements (by omission and commission) that led reasonable customers to believe that the Products that they were purchasing contained higher amounts of protein than the Products actually provided.

52.    At all times relevant to this Action, Hain knew that these representations and statements were false, deceptive and/or misleading.

53.    Plaintiffs and those similarly situated relied to their detriment on Hain's false, misleading, and deceptive advertising and marketing practices, including each of the misrepresentations and omissions set forth above.  Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Hain, they would have acted differently by, without limitation, refraining from purchasing Hain's Products, paying less for them, or purchasing fewer of the Products.

54.    Hain's acts and omissions are likely to deceive and have deceived the public.

55.    Hain engaged in these false, misleading, and deceptive advertising and marketing practices to increase its profits.  Accordingly, Hain has engaged in false advertising, as defined and prohibited by section 17500, *et seq*. of the California Business and Professions Code.

56.    Plaintiffs seek, on behalf of themselves and those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Hain from

Plaintiffs and those similarly situated by means of the false, misleading, and deceptive advertising and marketing practices complained of herein, plus interest thereon.  Plaintiffs and those similarly situated may be unable to obtain monetary damages under other causes of action pleaded herein, and thus, plead this claim for restitution in the alternative.

57.     Wherefore, Plaintiffs pray for judgment against Hain as set forth hereafter.

### THIRD CAUSE OF ACTION
**Violations of California Business & Professions Code §§ 17200, *et seq*.**
**Based on Unlawful Business Practices**
**(Plaintiffs on Behalf of Themselves and The California Class)**

58.     Plaintiffs reallege and incorporate by reference as if specifically set forth herein the paragraphs of this Class Action Complaint.

59.     The violation of any law constitutes an unlawful business practice under Cal. Business & Professions Code § 17200.

60.     The Sherman Law prohibits the manufacture, sale, and delivery of any food that is "misbranded."  Cal. Health & Safety Code § 110760.  Food is misbranded it its labeling is "false or misleading in any particular."  *Id*. at § 110660.

61.     Hain is a corporation and, therefore, is a "person" within the meaning of the Sherman Law."  Cal. Health & Safety Code § 109995.

62.     Hain's conduct also violates California Cal. Bus. & Prof. Code § 17500, which prohibits knowingly making, by means of any advertising device or otherwise, any untrue or misleading statement with the intent to sell a product or to induce the public to purchase a product.  By misrepresenting that the Products are Greek yogurt, Hain is violating Cal. Bus. & Prof. Code § 17500.

63.     As detailed more fully in the preceding paragraphs, the acts and practices alleged herein also violate the CLRA as they were intended to or did result in the sale of the Products in violation of California Civil Code §§ 1770(a)(5), 1770(a)(7) & 1770(a)(9).

64.     Hain's conduct is also a breach of warranty.  Hain's representations that the Products are Greek yogurt constitute affirmations of fact made with regard to the Products, as well as descriptions of the Products, that are part of the basis of the bargain between Hain and purchasers of the Products. Because those representations are material, false, and misleading, Hain has breached its express warranty as to the Products and has violated California Commercial Code § 2313.

65.     By violating the laws enumerated above, Hain has engaged in unlawful business acts and practices which constitute unfair competition within the meaning of California Business & Professions Code § 17200.

66.     Plaintiffs purchased the Products after viewing Hain's material representations that the Products were Greek yogurt or based on their belief or understanding that that was formed in reliance on Hain's material representations about the Greek nature of the yogurt.

67.     Plaintiffs and Class members would not have paid the significant premium for the Products over the price of similar regular yogurt products that do not make illegal Greek yogurt representations, would have purchased less of the Product, or would have paid less for the Product but for Hain's false promotion of the Products.  Plaintiffs and Class members have thus suffered injury in fact and lost money or property as a direct result of Hain's misrepresentations and material omissions.

68.     An action for injunctive relief and restitution is specifically authorized under Cal. Bus. & Prof. Code § 17203.  Plaintiffs and those similarly situated may be unable to obtain monetary damages under other causes of action pleaded herein, and thus, plead this claim for restitution in the alternative.

69.     Plaintiffs and Class members are also entitled to an order enjoining Hain's wrongful acts and practices because they will be harmed again without an injunction and lack an adequate remedy at law to prevent or remedy such harm.

70.     Wherefore, Plaintiffs pray for judgment against Hain as set forth hereafter.

## FOURTH CAUSE OF ACTION

### Violations of California Business & Professions Code §§ 17200, *et seq*.

### Based on Fraudulent Acts and Practices

### (Plaintiffs on Behalf of Themselves and The California Class)

71.    Plaintiffs reallege and incorporate by reference as if specifically set forth herein the paragraphs of this Class Action Complaint .

72.    Under California Business & Professions Code § 17200, any business act or practice that is likely to deceive members of the public constitutes a fraudulent business act or practice.

73.    Hain has engaged and continues to engage in conduct that is likely to deceive members of the public.  This conduct includes misrepresenting that the Products are Greek yogurt when, in fact, the Products are just thicker, regular yogurt containing half the amount of protein of authentic Greek yogurts.

74.    Plaintiffs purchased the Products after viewing Hain's material representations that the Products were Greek yogurt or based on their belief or understanding that that was formed in reliance on Hain's material representations about the Greek nature of the yogurt.  Hain's representations that the Products are Greek yogurt deceived Plaintiffs and Class members and are likely to deceive reasonable consumers.  Plaintiffs and Class members would not have purchased the Products, would have purchased less of the Product, or would not have paid as much for the Products but for Hains's false representations that the Products are Greek yogurt.  Plaintiffs have thus suffered injury in fact and lost money or property as a direct result of Hain's misrepresentations and material omissions.

75.    By committing the acts alleged above, Hain has engaged in fraudulent business acts and practices, which constitute unfair competition within the meaning of California Business & Professions Code § 17200.

76.     An action for injunctive relief and restitution is specifically authorized under Cal. Bus. & Prof. Code § 17203.  Plaintiffs and those similarly situated may be unable to obtain monetary damages under other causes of action pleaded herein, and thus, plead this claim for restitution in the alternative.

77.     Plaintiffs and Class members are also entitled to an order enjoining Hain's wrongful acts and practices because they will be harmed again without an injunction and lack an adequate remedy at law to prevent or remedy such harm.

78.     Wherefore, Plaintiffs pray for judgment against Hain as set forth hereafter.

## FIFTH CAUSE OF ACTION
### Violations of California Business & Professions Code §§ 17200, et seq.
### Based on Unfair Business Acts and Practices
### (Plaintiffs on Behalf of Themselves and The California Class)

79.     Plaintiffs reallege and incorporate by reference as if specifically set forth herein the paragraphs of this Class Action Complaint.

80.     Under California Business & Professions Code § 17200, any business act or practice that is unethical, oppressive, unscrupulous and/or substantially injurious to consumers, or that violates a legislatively declared policy, constitutes an unfair business act or practice.

81.     Hain has engaged and continues to engage in conduct that is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.  This conduct includes, but is not limited to, advertising and marketing the Products as Greek yogurt when they are not.  By taking advantage of consumers desire to purchase Greek yogurt products, Hain's conduct, as described herein, far outweighs the utility, if any, of such conduct.

82.     Hain has also engaged and continues to engage in conduct that violates the legislatively declared policy of multiple laws, including, *inter alia*, the CLRA's policy against misrepresenting the characteristics, uses, benefits, and quality of goods for sale.

83.     Hain's conduct, including misrepresenting the characteristics of the Products, is substantially injurious to consumers.  Such conduct has and continues to cause substantial injury to consumers because consumers would not have purchased the Products at all, would not have paid such a high price for the Products, or purchased fewer Products but for Hain's false promotion of the Products as being Greek yogurt.  Consumers have thus overpaid for the Products.  This injury is not outweighed by any countervailing benefits to consumers or competition.  Indeed, no benefit to consumers or competition results from Hain's conduct.  Hain gains an unfair advantage over its competitors, whose advertising and labeling for their yogurt products must comply with the CLRA.

84.     Because consumers reasonably rely on Hain's representations of the Products as Greek yogurt and injury results from ordinary use of the Products, consumers could not have reasonably avoided such injury.

85.     Plaintiffs purchased the Products after viewing Hain's material representations that the Products were Greek yogurt or based on their belief or understanding that that was formed in reliance on Hain's material representations about the Greek nature of the yogurt.  Hain's representations that the Products are Greek yogurt deceived Plaintiffs and Class members and are likely to deceive reasonable consumers.  Plaintiffs and Class members would not have purchased the Products, would have purchased less of the Product, or would not have paid as much for the Products but for Hains's false representations that the Products are Greek yogurt.  Plaintiffs have thus suffered injury in fact and lost money or property as a direct result of Hain's misrepresentations and material omissions.

86.     By committing the acts alleged above, Hain has engaged in unfair business acts and practices which constitute unfair competition within the meaning of California Business & Professions Code § 17200.

87.     An action for injunctive relief and restitution is specifically authorized under California Business & Professions Code § 17203.

88.    Wherefore, Plaintiffs pray for judgment against Hain, as set forth hereafter.

## SIXTH CAUSE OF ACTION

### Breach of Express Warranty — Uniform Commercial Code § 2-313

### (Plaintiffs on Behalf of Themselves, the Class, and the California Class)

89.    Plaintiffs reallege and incorporate by reference as if specifically set forth herein the paragraphs of this Class Action Complaint.

90.    The Uniform Commercial Code § 2-313 provides that any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the promise; and similarly that any description of the goods which is made as part of the basis of the bargain creates an express warranty to which the goods shall conform.

91.    As detailed above, Hain sold, labeled, and represented the Products as Greek yogurt. Hain's representations that the Products are Greek yogurt constitute affirmations of fact made with regard to the Products as well as descriptions of the Products.

92.    Hain's representations and descriptions regarding the Greek nature of the Products are uniformly made in the Products' advertising, marketing, and labeling, and are thus part of the basis of the bargain between Hain and purchasers of the Products.

93.    At the time that Hain manufactured, sold, and distributed the Products, Hain knew that the Products were not Greek yogurt.

94.    As set forth in the paragraphs above, the Products are not Greek yogurt and thus do not conform to Hain's express representations and descriptions to the contrary.  Hain has thus breached its express warranties concerning the Products.

95.    On May 14, 2024, Plaintiffs sent a pre-suit demand letter to Hain notifying Hain that the Products are not Greek yogurt.  Thus, Hain has actual and constructive knowledge that the Products are not Greek yogurt and were not sold as marketed and advertised.

96.     As a direct and proximate result of Hain's breach of express warranties, Plaintiffs and class members have suffered damages.

97.     Wherefore, Plaintiffs pray for judgment against Hain, as set forth hereafter.

**SEVENTH CAUSE OF ACTION**

**Common Law Fraud, Deceit and/or Misrepresentation**

**(Plaintiffs on Behalf of Themselves, the Class, and the California Class)**

98.     Plaintiffs reallege and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

99.     Hain has fraudulently, deceptively, and/or negligently informed Plaintiffs and members of the Class that the Products provide more grams of protein than they actually provide by identifying the Greek Gods yogurt as Greek yogurt.

100.    These misrepresentations and omissions were known exclusively to, and actively concealed by, Hain, not reasonably known to Plaintiffs, and material at the time they were made and/or a substantial factor in causing Plaintiffs and Class members' harm.  Hain knew or should have known the composition of the Products, and knew or should have known that the Products did not contain or provide the amount of protein associated with actual Greek yogurt.  Hain's misrepresentations and omissions concerned material facts that were essential to the analysis undertaken by Plaintiffs as to whether to purchase Hain's Products.  In misleading Plaintiffs and not so informing them, Hain breached its duty to them.  Hain also gained financially from, and as a result of, this breach.

101.    Plaintiffs and those similarly situated relied to their detriment on Hain's misrepresentations and fraudulent omissions.  Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Hain, they would have acted differently by, without limitation, declining to purchase the Products, purchasing less of them, or paying less for the Products.

102.    By and through such fraud, deceit, misrepresentations and/or omissions, Hain intended to induce Plaintiffs and those similarly situated to alter their position to their detriment.  Specifically, Hain fraudulently and deceptively induced Plaintiffs and those similarly situated to, without limitation, purchase the Products and pay more for the Products than they were worth.

103.    Plaintiffs and those similarly situated justifiably and reasonably relied on Hain's misrepresentations and omissions, and, accordingly, were damaged by Hain.

104.    As a direct and proximate result of Hain's misrepresentations and/or omissions, Plaintiff and those similarly situated have suffered damages, including, without limitation, the amount they paid for the Products.

105.    Hain's conduct as described herein was willful and malicious and was designed to maximize Hain's profits even though Hain knew that it would cause loss and harm to Plaintiff and those similarly situated.

## EIGHTH CAUSE OF ACTION
### Breach of Quasi-Contract/Unjust Enrichment
### (Plaintiffs on Behalf of Themselves and the Class)

106.    Plaintiffs reallege and incorporate by reference as if specifically set forth herein the paragraphs of this Class Action Complaint.

107.    Plaintiffs and the Class members conferred benefits on Hain by purchasing the Products.

108.    Hain had knowledge of such benefits.

109.    Hain voluntarily accepted and retained the benefits Plaintiffs and the Class members conferred on Hain.

110.    Hain has been unjustly enriched in retaining the profits and revenues derived from Plaintiffs' and the Class members' purchases of the Products.

111.    Retention of that money under these circumstances is unjust and inequitable because Hain illegally, falsely, and misleadingly represented through its labeling, advertising, and marketing materials that the Products are Greek yogurt when they are not.

112.    These misrepresentations caused injuries to Plaintiffs and the Class members because they would not have paid the premium Hain charges for its purportedly "Greek" yogurt, they would have purchased fewer Products, or they would not have purchased the Products at all.

113.    Because Hain's retention of the non-gratuitous benefits conferred to it by Plaintiffs and the Class members is unjust and inequitable, Hain ought to pay restitution to Plaintiff and the Class members for its unjust enrichment.  Plaintiffs and those similarly situated may be unable to obtain monetary damages under other causes of action pleaded herein, and thus, plead this claim in the alternative.

114.    As a direct and proximate result of Hain's unjust enrichment, Plaintiffs and the Class members are entitled to restitution or disgorgement in an amount to be proved at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment and relief against Hain as follows:

A.    That the Court declare this a class action;

B.    That the Court preliminarily and permanently enjoin Hain from conducting its business through the unlawful, unfair, or fraudulent business acts or practices, untrue and misleading advertising, and other violations of law described in this complaint;

C.    That the Court order Hain to conduct a corrective advertising and information campaign advising consumers that the products do not have the characteristics, uses, benefits and quality Hain has claimed;

D.    That the Court order Hain to cease and refrain from marketing and promotion of the products that state or imply that the products are Greek yogurt;

E.     That the Court order Hain to implement whatever measures are necessary to remedy the unlawful, unfair, or fraudulent business acts or practices, untrue and misleading advertising and other violations of law described in this Complaint;

F.     That the Court order Hain to notify each and every class member of the pendency of the claims in this action to give such individuals an opportunity to obtain restitution and damages from Hain;

G.     That the Court order Hain to pay restitution to restore all class members all funds acquired by means of any act or practice declared by this Court to be an unlawful, plus pre- and post-judgment interest thereon;

H.     That the Court order Hain to disgorge all profits derived by Hain as a result of its unlawful acts or practices as alleged in this complaint;

I.     That the Court award damages to Plaintiffs and the Class to compensate them for the unfair or fraudulent business acts or practices, and untrue or misleading advertising, alleged in this Complaint;

J.     That the Court award punitive damages pursuant to California Civil Code § 1780(a)(4);

K.     That the Court grant Plaintiffs their reasonable attorney fees and costs of suit pursuant to California Code of Civil Procedure § 1021.5, California Civil Code § 1780(d), the common fund doctrine, or any other appropriate legal theory; and

L.     That the Court grant such other and further relief as may be just and proper.

### **JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action so triable.

Dated:   May 19, 2025

Respectfully submitted,

LEXINGTON LAW GROUP

*/s/ Patrick Carey*

Patrick Carey
Mary Haley Ousley

Attorneys for Plaintiffs
Angela Sonrode and Lacey Timmins